Shauck, J.
By its express terms the act in question operates only in Cuyahoga county. It attempts to authorize the issuance of ‘ ‘county building bonds”in a sum not exceeding $1,500,000, payable in fifty years and redeemable in thirty years, the funds derived from the sale of such bonds to be expended in acquiring a site and in the erection, equipment and furnishing of “new county buildings for such county.” It also assumes to authorize the levy of taxes upon the property of the county in addition to all other taxes authorized by law, and the creation of a sinking fund for the redemption of said bonds. The seventh and eighth sections of the act are as follows:
“Section 7. The judges of the common pleas court of such county shall appoint three citizens, residents of such county, all of whom shall not belong to the same political party, who shall act with the commissioners of such county, and with them compose a county buildings commission for- the selection and purchase of a site, the approving of plans and specifications for such county buildings, for the sale of the bonds provided for in this act, and for the letting of any and all contracts for the *467 whole or any part of the work or material used in constructing, equipping -and furnishing of such county buildings, and shall be notified of and shall sit, act and vote at all meetings of such commissioners when any matter is to be considered or acted upon by such commissioners in any way connected with the sale of bonds, for the location or purchase of a site and the erection, equipment and furnishing of such county buildings, and may enter into all discussions relating to any part of the same, and shall have free access at all times to all books, papers, contracts, or memorandums pertaining thereto as freely and fully as such commissioners. No act of such commission involving the expenditure of money shall be valid unless it shall be approved by at least four of its members upon a call of the “yeas” and “nays,” duly entered on its journal.
“Section 8. Such three citizens shall also examine the work upon such county buildings from time to time as it progresses, and with sufficient frequency to be fully advised as to the class of work being done thereon, and shall call attention to each of such county commissioners, and of the superintendents, and of the architects of such building, and of the county solicitor of such county, to any defect in material or workmanship which they, or either of them, may observe, and to any act which they, or either of them, deem wrong or unjust to such county, and they shall each receive as compensation for such labor and service the sum of one hundred dollars per month, to be paid from such county building fund upon the warrant of the auditor of such county drawn upon the treasurer of such county, and such compensation to continue until such buildings are completed, *468 «quipped, furnished and accepted by such county buildings commission, it being the intention hereof that in all matters pertaining to the location, and purchase of a site to the approval of the original plans and specifications for such county buildings, and any change or alteration therein, and in any and all matters affecting or connected with the sale of bonds, acceptance of bids, approving of plans, estimates and contracts, or otherwise, except the signing of any bonds issued, such three citizens shall have the same authority as any one of such county commissioners.”
The succeeding sections of the act provide for the qualification of the three citizens to be appointed by the judges of the court of common pleas by giving • bond and taking an oath for the ■faithful performance of their duties; for the employment of a superintendent and architect and •defining their duties, and for the keeping of a ■record of the proceedings of the buildings commission. The validity of the act is challenged upon the two grounds that it is in conflict with section 16 of article 2 of the constitution that: ■“All laws of a general nature shall have a uniform •operation throughout the state;” and with section 1 of the 10th article that: ‘‘The general assembly shall provide by law for the election of such county, and township officers as may be necessary.”
. With respect to both objections it is to be observed that this act differs from all those to which our attention has been called. We have become familiar with acts authorizing named counties to erect buildings for the particular purpose described in the acts themselves, and with statutory provisions to authorize the appointment of others to act with the county commissioners of the county *469 named in the erection of court houses so authorized. Those acts have received acquiescence, if not approval, because of the assumption that the-legislature had exercised its discretion, in determining that the county named had need of a building for the purpose designated in the act. But in. the act now considered there does not purport to have been such exercise of legislative discretion-It defines no purpose to which the money arising from the sale of bonds shall be devoted except to the erection and furnishing of “new county buildings for such county. ” In other words, it assumes to establish in Cuyahoga county a system for the erection of county buildings not in operation elsewhere in the state. In this respect among others the act differs substantially from that considered by the circuit court in the Comm’rs v. Pargillis, 10 C. C. Rep., 376; s. c. 6 Circ. Dec., 717; and the-, affirmance of that judgment by this court is not significant with respect to any question now before us..
It is apparent from the terms of the 26th section of the 2d article of the constitution, as well as from numerous decisions of this court, that the nature of a subject of legislation, whether general or local, cannot be determined by the operation of an act concerning it. To say that the subject is local because the legislation with respect to it is. of local operation only would be to annul the section. If it is not true that all subjects are general which may be completely comprehended within legislation which operates uniformly throughout-the state, it would be difficult indeed, and hitherto-it seems to have been impossible, to state any other rule which would be consistent with the language employed by those who framed these and kindred limitations upon the exercise of legislativo *470 power, and with the purposes for which those limitations were fixed. The language employed does not suggest, if indeed it permits, a narrower rule. In Lehman v. McBride, 15 Ohio St., 573, the purpose of this limitation was stated with admirable accuracy and clearness by Scott, J.: “Under the former constitution, laws having a general subj'eet matter, and therefore of a general nature, were frequently limited expressly in their operation to one or more counties, to the exclusion of other portions of the state. As a consequence on the same subject, there might be one law for Hamilton county, another for Franklin, and still a third for Ashtabula. This naturally led to improvident legislation, enacted by the votes of legislators who were indifferent in the premises, because their own immediate constituents were not to be affected by it. To arrest, and for the future prevent this evil, the provision in question was inserted in the present constitution.”
This statement of the pur pose, of the limitation has been quoted frequently, and always with approval. The counties of the state are not provided with legislative bodies as would have been the case if laws with respect to general existing conditions were to be enacted upon the judgment of the representatives of a single county.' The votes of a majority of the representation of the entire state being required to enact a statute, these limitations are prescribed to the end that approving votes may be founded upon approving judgments. The act under consideration, operating in a single county, provides for the erection of county buildings which are required in every county of the state. Every agency which it invokes to carry out the scheme in Cuyahoga county *471 is found in every other county. It denies to the taxpayers of the county the opportunity to vote respecting an expenditure of one and one-half •millions of dollars while in other counties that right is accorded to the taxpayers by section 2825, of the Revised Statutes, with respect to all expenditures for such purposes in excess of ten thousand dollars. It provides a local and peculiar scheme with respect to a subject existing everywhere and without a distinguishing condition which counsel have been able to suggest. It cannot be reconciled with this plain provision of the constitution, nor with the views expressed in State ex rel. v. Ellet, 47 Ohio St., 90; State ex rel. v. Commissioners, 54 Ohio St., 333; Hixson v. Burson, 54 Ohio St., 470; State ex rel. v. Davis, 55 Ohio St., 15; State ex rel. v. Bargus et al., 53 Ohio St., 94.
To the suggestion that excellent results are anticipated from the high character of the commission appointed by the judges of the common pleas court to aid in carrying out the provisions of this act, it is a sufficient answer that since like conditions exist in the other counties of the state the constitution requires that the beneficence of the act shall be extended to all the people of the state.

Demurrer sustained and judgment of ouster.

Minshall, J., dissents.